IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES MICHAEL CUNNINGHAM, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Case. No. 1:13-cv-01229-JDB-egb |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody ("§ 2255 Motion") filed by Movant, James Michael Cunningham, Bureau of Prisons register number 24567-076, an inmate at the Federal Correctional Institution in Manchester, Kentucky. (§ 2255 Mot., *Cunningham v. United States*, No. 1:13-cv-01229-JDB-egb (W.D. Tenn.), Docket Entry ("D.E.") 1.) For the reasons stated below, the Court DENIES Cunningham's § 2255 Motion.

I. BACKGROUND

A. Case Number 11-10013

On February 22, 2011, a federal grand jury returned a five-count indictment against Cunningham and his co-defendants, Denise Michelle Pratt and Lori Lynne Larkins. (Indictment, *United States v. Cunningham*, No. 1:11-cr-10013-JDB-1 (W.D. Tenn.), D.E. 1.) On December 12, 2011, the grand jury returned a six-count superseding indictment against Cunningham and his

co-defendants. (Superseding Indictment, *United States v. Cunningham*, No. 1:11-cr-10013-JDB-1 (W.D. Tenn.), D.E. 101.) Count 1 charged that Cunningham and his co-defendants conspired to manufacture over 500 grams of methamphetamine on or about January 24, 2011, in violation of 21 U.S.C. § 846. (*Id.*) Count 2 charged them with possession with the intent to distribute over 500 grams of methamphetamine on or about January 30, 2009, in violation of 21 U.S.C. § 841(a)(1). (*Id.*) Count 3 alleged that Cunningham and his co-defendants possessed Ephedrine/Pseudoephedrine with the intent to manufacture methamphetamine on or about January 24, 2011, in violation of 21 U.S.C. § 841(c) and 18 U.S.C. § 2. (*Id.*) Count 4 claimed Cunningham used and maintained a building for the purpose of manufacturing and using methamphetamine on or about January 30, 2009, in violation of 21 U.S.C. § 856. (*Id.*) Count 5 charged that Cunningham possessed equipment, chemicals, products, and materials that were used to manufacture methamphetamine on or about January 30, 2009, in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6). (*Id.*) The factual basis for these charges is stated in the presentence report ("PSR"):

> 4. At approximately 2:11 p.m. on January 30, 2009, deputies of the Benton County (TN) Sheriff's Office (BSCO) served a state arrest warrant for a charge of Promotion of Methamphetamine on **James Michael Cunningham**. . . . While attempting to locate **Cunningham**, BSCO deputies observed several items associated with the manufacture of methamphetamine (meth) outside his home and near a shop/outbuilding located on the property. . . . After arresting **Cunningham** on the state warrant, Investigator Bryant Allen applied for a state search warrant. . . .
>
> 5. Upon entering a shop/outbuilding located on **Cunningham's** property, Investigator Allen and other BSCO officers immediately detected the smell of anhydrous ammonia. An empty refrigerator in the shop/outbuilding also contained a strong odor of anhydrous ammonia. Several empty lithium battery packs were found inside the freezer compartment of the refrigerator. Approximately 530 grams (gross weight) of a white, powdery substance were discovered inside a 55-gallon drum. Also found in the

55-gallon drum was approximately 605.4 gross grams of a grayish, powdery substance, and approximately 77.6 gross grams of a white red crushed substance in a zip-loc bag.

6. An extremely large number of additional items, most of which are known to be associated with the manufacture, production, or use of meth, were also found in the shop/outbuilding and were seized as evidence. A partial list of the many items seized would include the[ ] following: a large number of boxes of plastic bags/baggies (multiple sizes and types); miscellaneous tools; various types of paraphernalia used to smoke or ingest meth, some with residue; plastic buckets; kitty litter; duffle bags; pill grinders; miscellaneous plastic containers; a large amount of plastic tubing; glass jars with residue; (2) vent fans; latex and rubber gloves; shop towels; approximately 650 coffee filters; Shop-Vac filters; dust masks; electrical tape; plastic funnels; stir spoons; strainers; aluminum foil; metal valves; plastic hose couplings; two-liter plastic bottles; (7) lithium batteries; (3) propane cylinders; and (9) anhydrous ammonia tanks.

7. Among numerous known meth precursor items found in the shop/outbuilding were the following: two (2) bottles of alcohol; one (1) plastic pitcher containing Coleman fuel; two (2) cans of Coleman fuel; one (1) bottle of vinegar; one (1) two-liter bottle of acetone; one (1) two-gallon bag of bi-layered unknown substance; six (6) cans of salt; two (2) boxes of rock salt; two (2) plastic containers of salt; three (3) hydrogen chloride (HCI) gas generators; one (1) one–gallon gas can, converted to an HCI generator; one (1) bottle of lye (sodium hydroxide); and two (2) bottles of Liquid Fire.

. . . .

9. During a search of the master bedroom of **Cunningham's** residence, deputies discovered a large zip-loc bag of a white, powdery substance inside a small purse located behind a football photo. Inside another large zip-loc bag were ten (10) corner baggies, each containing a small amount of a white, powdery substance. Deputy Tim Moss discovered a clear baggie containing twenty-seven (27) unknown white tablets; a sealed blister pack containing six (6) pseudoephedrine tablets, 25 mg per tablet; and four (4) sealed blister packs containing thirty-nine (39) pseudoephedrine tablets, 30 mg per tablet.

10. During a search of an ammunition box, located inside a large gun safe in the master bedroom, Deputy Moss discovered a zip-loc bag containing one-hundred and forty-three (143) unknown white tablets, another zip-loc bag containing twenty-nine (29) unknown white tablets, and a third bag

containing ten (10) unknown white tablets. . . . . [T]welve (12) firearms (shotguns and rifles), some which were loaded, were found in and seized from the gun safe in the master bedroom. . . . .

11. A hazardous materials (Haz-Mat) company was contracted to clean-up the meth lab site and to remove and dispose of the meth-related hazardous materials found on **Cunningham's** property. The total amount paid by the DEA for contracted hazardous waste removal services was $10,910.00.

. . . .

13. The combined total net weight (sans packaging) of the exhibits . . . all of which contained a detectable amount of methamphetamine, is 1,660.6 grams (1.66 kilograms).

. . . .

15. [A] total of 698 pseudoephedrine pills/tabs, still in the original packaging and readily-identifiable, were seized from **Cunningham's** residence/property on January 20, 2009. The total amount (net weight) of the pseudoephedrine contained in 698 pills/tabs is 53,040 milligrams (53.0 grams).

16. The zip-loc bag containing approximately 77.6 grams (includes packaging) of a white and red crushed substance, found in **Cunningham's** shop/outbuilding, was submitted for DEA Crime Laboratory analysis. All of the substance submitted was found to contain pseudoephedrine. The total amount (net weight) of pseudoephedrine in the substance was determined to be 6.9 grams.

17. In addition to the 698 pseudoephedrine pills/tabs . . . a total of at least 247 additional pills, all removed from the original packaging, were submitted to the DEA Crime Laboratory for analysis. Crime laboratory test results confirmed that all of the 247 pills/tabs contained pseudoephedrine. . . .

18. On February 3, 2011, BCSO Investigator Bryant Allen receiv[ed] reliable information that **Cunningham** was in possession of crystal meth and that he was traveling in a grey or blue sedan. During the early evening of February 3, 2011, Investigator Lowery and BSCO Sgt. Pafford stopped a bluish Buick sedan, driven by **Cunningham's** girlfriend . . . in front of Camden (TN) Junior High School. **Cunningham** was a front seat passenger in the vehicle. Investigator Allen advised **Cunningham** that the BSCO had received reliable information that he was in possession of meth and that a trained drug canine (K-9) was being brought in. . . . The K-9

4

subsequently alerted on the area of the passenger-side front seat, where **Cunningham** was seated. **Cunningham** and [his girlfriend] were advised that the K-9 had indicated the presence of drugs and were instructed to exit the vehicle. . . . Upon opening the center console of the vehicle, Investigator Allen discovered two (2) plastic containers. Inside the plastic containers, Investigator Allen found a total of six (6) small plastic baggies or corner-baggies, each of which contained a small quantity of what appeared to be crystal meth. A quantity of empty plastic baggies and a set of digital scales were also in the console.

19. The six (6) baggies of suspected crystal meth were submitted to a TBI Crime Laboratory for quantitative analysis. Subsequent crime lab test results reflect that a 1.2 gram (net weight) sample portion of the total substance submitted was found to contain methamphetamine. The weight of the additional substance from which the test sample was taken was 3.1 grams.

20. The total identified amount of relevant conduct known to be attributable to **Cunningham** is 1,662.2 grams . . . of a mixture or substance containing a detectable amount of methamphetamine and 67.3 grams . . . of pseudoephedrine.

(PSR ¶¶ 4–7, 9–11, 13, 15–20.)

Pursuant to a written Plea Agreement, Cunningham appeared before this judge on May 18, 2012, to plead guilty to Count 2 of the Superseding Indictment. (Min. Entry, *United States v. Cunningham*, No. 1:11-10013-JDB-1 (W.D. Tenn.), D.E. 98; Plea Agreement, *id*., D.E. 99.) The Plea Agreement provided, in pertinent part, that "[t]he Defendant understands and agrees that the Court will make the final determination of facts as to any sentence and as to any mitigating or aggravating factors concerning the sentence to be imposed. . . . The Court is not limited to consideration of the facts and events provided by the Government." (Plea Agreement, *id*., ¶ 9, D.E. 99.)

Pursuant to the investigation and analysis contained in the PSR, Movant received four criminal history points for previous offenses and was placed in criminal history category III.

(PSR ¶ 41.) He received one criminal history point, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1(c), for a December 8, 2004 conviction in the General Sessions Court for Benton County in Camden, Tennessee (#04GCR-13438 to #04GCR-13445) for (1) possession of unlawful drug paraphernalia; (2) unlawful possession of a weapon; (3-4) two counts of aggravated assault; (5-7) three counts of domestic assault; and (8) simple possession of marijuana. (*Id.* ¶ 36.) Cunningham received a sentence of 11 months, 29 days, all but 20 days suspended to deferred probation for Counts 5 & 7 to run concurrently with one another. (*Id.*) He also received a sentence of 11 months, 29 days, all but 20 days suspended to deferred probation for Count 6, which was to run consecutively to Counts 5 & 7. (*Id.*)

One criminal history point was assessed against Movant pursuant to U.S.S.G. § 4A1.1(c), for a September 24, 2008 conviction in General Sessions Court for Benton County in Camden, Tennessee (#2008-TR-491; 2008-TR-492; 2008-TR-537) for (1) unlawful possession without prescription; (2) possession of unlawful drug paraphernalia; (3) simple possession/causal exchange. (*Id.* ¶ 37.) He received a sentence of 11 months, 29 days, all suspended to unsupervised probation, credit for time served, and a $150 fine for Count 2; and a sentence of 11 months, 29 days, all suspended to unsupervised probation, credit for time served, and a $250 fine for Count 3 to run concurrently with Count 2. (*Id.*) Consequently, the subtotal of Cunningham's criminal history points, pursuant to U.S.S.G. § 4A1.1(a), (b), and (c) was two. (*Id.* ¶ 39.) Two criminal history points were added, pursuant to U.S.S.G. § 4A1.1(d), because at the time the instant offense was committed, he was on unsupervised probation for his September 24, 2008 conviction. (*Id.* ¶ 40.) With a total of four criminal history points, the inmate was placed in

6

criminal history category III. (*Id*. ¶ 41.) With a total offense level of 35 and a criminal history category of III, his guideline sentencing range was 210–262 months. (*Id*. ¶ 69).

At a hearing on August 17, 2012, the Court sentenced Cunningham to a term of imprisonment of one hundred thirty-five months, five years supervised release, $10.910.00 of restitution, and a $100.00 special assessment. (Min. Entry, *United States v. Cunningham*, No. 1:11-10013-JDB-1 (W.D. Tenn.), D.E. 106.) Judgment was entered on August 20, 2012. (J. in a Criminal Case, *id*., D.E. 108.) Cunningham did not take a direct appeal, having waived the right to do so. (*See* Plea Agreement, *id*., ¶ 8, D.E. 99.)

### B. Case Number 13-01229

On August 12, 2013, Cunningham filed his *pro se* § 2255 Motion. (§ 2255 Mot., *Cunningham v. United States*, No. 1:13-01229-JDB-egb, D.E. 1.) Cunningham presented two issues: (1) whether his sentence was unconstitutional in light of the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013); and (2) whether his counsel rendered ineffective assistance of counsel for failing to object to an enhancement to his sentence pursuant to U.S.S.G. § 4A1.1(c).

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks and citations omitted).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks and citation omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotation marks and citation omitted). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's

recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### III. ANALYSIS OF MOVANT'S CLAIMS

#### A. Supreme Court Decision in *Alleyne v. United States*

In his first issue, Cunningham maintains that his sentence is unconstitutional and his plea agreement is invalid because of the United States Supreme Court decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which was issued after his conviction became final. In *Alleyne*, the Court held that any facts that increases the mandatory minimum sentenced for a crime is an "element" that must be submitted to the jury, rather than a "sentencing factor." 133 S. Ct. at 2155. Applying this standard, the Court concluded that a finding that a defendant charged under 18 U.S.C. § 924(c) "brandished" a firearm, which triggers a mandatory minimum sentence of seven years, must be submitted to the jury. *Id*. at 2163–64.

The decision in *Alleyne* would only be applicable in this case if it involved a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." 28 U.S.C. § 2255(f)(3). A new rule is "made retroactive to cases on collateral review" only if the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 662 (2001). The Court has not held *Alleyne* to be retroactively applicable to cases on collateral review. Several courts, including the Sixth Circuit Court of Appeals, have declined to apply *Alleyne* retroactively. *See, e.g., In re Mazzio*, 756 F.3d 487, 488 (6th Cir. 2014) (denying leave to file a second or successive § 2255 motion "[b]ecause *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court"); *Rogers v. United States*, 561 F.

9

App'x 440, 443–44 (6th Cir. 2014) ("[T]he constitutional rules of criminal procedural [sic] adopted in *Alleyne* and [*Peugh v. United States*, 133 S. Ct. 2072 (2013),] are not applicable on collateral review of Rogers's sentence, because the judgment became final before the Court's decisions in A*lleyne* and *Peugh*."), *cert. denied,* 135 S. Ct. 500 (2014); *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014) ("[W]e now hold that *Alleyne* cannot be applied retroactively to cases on collateral review."); *United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (per curiam) ("We note that *Alleyne* has not been made retroactively applicable to cases on collateral review."); *Garcia v. United States*, No. 3:13-1308, 2014 WL 958017, at *1 (M.D. Tenn. Mar. 12, 2014) (denying relief on *Alleyne* issue raised in initial § 2255 motion because decision is not retroactive).

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's plea agreement, conviction, and sentence are valid and, therefore, his § 2255 Motion is DENIED as to the first issue. Judgment shall be entered for Respondent.

### B. Ineffective Assistance of Counsel

In the second issue, Cunningham argues that his Sixth Amendment right was violated because he was denied effective assistance of counsel.

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must

10

demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 131 S. Ct. at 787–88 (internal quotation marks and citations omitted); *see also id.* at 791–92 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (internal citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."). Where, as here, a movant

---

[1] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

contends that his attorney rendered ineffective assistance at a sentencing hearing, prejudice is established where a misapplication of the Sentencing Guidelines increased a prisoner's sentence. *Glover v. United States*, 531 U.S. 198, 202–04 (2001).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788. Cunningham insists that "his prior misdemeanor offenses [in 2008] should not have been counted [as an additional criminal history point] because in both instances he was given full credit for time served on earlier unrelated offenses and, therefore, he did not actually serve any time in prison for the misdemeanors in question." (§ 2255 Motion at 9, D.E. 1.) Cunningham states that, because U.S.S.G. § 4A1.2 Commentary Note 2 explains that a defendant must "actually serve" a period of imprisonment to qualify as a sentence of imprisonment under the *Guidelines Manual*, his previous misdemeanor conviction in 2008 should not have counted as an additional criminal history point since he received a suspended sentence. (*Id.*) He contends that if it were not for his counsel's ineffective assistance, "there is [a] reasonable probability that the

12

Petitioner's criminal proceedings specifically his sentence would have ended differently." (*Id*. at 10.) Finally, Movant avers that if his 2008 misdemeanor conviction was deducted from the calculation of his criminal history category, he would only have three criminal history points, placing him in criminal history category II with a guideline range of 188–235 months, instead of the higher range of 210–262 months. (*Id.* at 9.)

As explained above, Cunningham received a criminal history category of III, based upon his two previous misdemeanor convictions in 2004 and 2008. In 2004, he was sentenced to 11 months, 29 days, all but 20 days suspended to deferred probation for three counts. In 2008, he received a sentence of 11 months, 29 days, all suspended to unsupervised probation, credit for time served, and a fine of $400. For these two misdemeanors, he was assessed two criminal history points. He received two additional criminal history points because he was on unsupervised probation for the 2008 conviction at the time of the instant offense. With four criminal history points, Cunningham was placed in criminal history category III.

At issue here is whether the inmate's 2008 misdemeanor conviction of an 11 month, 29 day suspended sentence qualifies as a "sentence of imprisonment" under the *Guidelines Manual.* U.S.S.G. § 4A1.1(a)–(d) states the following:

> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Section 4A1.2(a)(3) states that "[a] conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)."

Section 4A1.2(b)(1)–(2) defines a "sentence of imprisonment" as:

(1) The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed.
(2) If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended.

Section 4A1.2, Commentary Note 2 provides further clarification as to what qualifies as a "sentence of imprisonment:"

2. **Sentences of Imprisonment.** To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . *See* § 4A1.2(a)(3) and (b)(2). For the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum. . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served. *See* § 4A1.2(b)(1) and (2). A sentence of probation is to be treated as a sentence under § 4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed.

Although he did not actually serve a period of imprisonment for his 2008 misdemeanor conviction, Cunningham's suspended sentence qualifies as a prior sentence and his unsupervised probation is treated as a sentence of imprisonment under the *Guidelines Manual*, pursuant to § 4A1.2 cmt. n.2 (2011). Accordingly, Movant accurately received four criminal history points and was properly placed in criminal history category III because of his 2004 and 2008 misdemeanor convictions. He was not prejudiced by his counsel's failure to object to the enhancement to his criminal history category and, therefore, cannot establish that his counsel was deficient in his performance. Based on this analysis, Cunningham's claim of ineffective assistance of counsel is without merit and is DISMISSED. Judgment is entered in favor of Respondent.

## IV. APPEAL ISSUES

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. § 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *See Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011); however, courts should not issue a COA as a matter of course. *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

For the reasons previously stated, the issues raised by Movant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability. The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *See Kincade v. Sparkman*, 117 F.3d 949, 951–52 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to

Federal Rule of Appellate Procedure 24(a). *See Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. *See* Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[2]

IT IS SO ORDERED this 28th day of January, 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.